**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATHRYN MCGARRIGLE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 22-4713 |
| | : | |
| CRISTO REY PHILADELPHIA HIGH | : | |
| SCHOOL | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                     April 17, 2023

  The President of a high school allegedly told the school's Chief Financial Officer in early March 2020 the faculty would not identify with or be able to talk to a later-fifties Caucasian woman then serving as the school's human resources director. The human resources director found out and complained to her supervisor and the school's general counsel shortly before COVID-19 mitigation closed the school. She heard nothing back from the school. The director next raised discrimination based on her white race, age, and gender three days before she took leave under the Family and Medical Leave Act in February 2021. She waited another forty-five days and allegedly filed a charge with the Equal Employment Opportunity Commission. An unpleaded person at the school fired her almost four weeks after learning of her charge explaining the school eliminated her position. But the school then hired a replacement over ten years younger than her. She now broadly alleges race, age, and gender discrimination and retaliation and the school violated the Family and Medical Leave Act. The school moves to dismiss. The director fails to plead facts providing the required notice necessary to proceed on many of her claims. We allow her to proceed on her retaliation claims under Title VII, section 1981, the Philadelphia Ordinance, and the Age Discrimination in Employment Act. She may also move forward on her age discrimination claims. We dismiss her remaining claims without prejudice to amend if consistent with Rule 11.

## I.    Alleged Facts

Cristo Rey Philadelphia High School formerly employed fifty-nine-year-old Caucasian woman Kathryn McGarrigle as its Human Resources Director. We are now addressing issues arising after Cristo Rey's President John O'Connell told Ms. McGarrigle's direct supervisor Chief Financial Officer Maryanne Doyle in early March 2020 the school's "faculty would not be able to go to [Ms. McGarrigle] with problems because she is a middle-aged white woman and could not identify with them."[1] Supervisor Doyle shared President O'Connell's comment with Ms. McGarrigle.

Ms. McGarrigle told Supervisor Doyle she considered President O'Connell's comment to be racist, sexist, and ageist and she wished to file a formal complaint. Ms. McGarrigle also reported President O'Connell's comment to Joanna Wuisinich, Cristo Rey's in-house counsel. Cristo Rey did not have a policy or procedure for reporting discrimination or making a formal complaint of discrimination.

Cristo Rey closed for remote learning in mid-March 2020 under COVID-19 mitigation. Ms. McGarrigle and other Cristo Rey employees began working from home. No one at Cristo Rey addressed Ms. McGarrigle's complaint about President O'Connell's comment and no one told Ms. McGarrigle of resolving her concern.

Eleven months later, and three days before she took medical leave for an unidentified period, Ms. McGarrigle emailed President O'Connell on February 12, 2021 to complain about the comment he made about her to Supervisor Doyle eleven months earlier: "Your comment was discriminatory towards my race, age and gender. When my request for a meeting with you did not take place, I had follow-up conversations with [Supervisor Doyle] and [Counsel Wuisinich] requesting a resolution, but nothing came of it. At that point I have no recourse [sic], because there

is no policy in place to address the process for this type of matter."[2] Ms. McGarrigle does not allege challenged conduct, hostility, harassment, or an adverse employment action between President O'Connell's alleged comments in early March 2020 and Ms. McGarrigle's February 12, 2021 email to President O'Connell.

Ms. McGarrigle began a medical leave under the Family and Medical Leave Act for an unidentified reason and unidentified length of time beginning February 15, 2021.

Ms. McGarrigle then filed the first of two charges with the Equal Employment Opportunity Commission forty-five days later. Her April 30, 2021 charge alleged discrimination on the basis of race, age, and gender.[3] She did not plead the adverse employment action complained of to the Commission. She did not plead the complained of conduct to the Commission, including retaliation, hostile work environment, or any employment-based discrimination other than race, age, and gender-based discrimination. Ms. McGarrigle does not plead whether the Commission issued a right-to-sue letter following her April 30, 2021 charge.

President O'Connell and Cristo Rey received notice of her charge with the Commission on May 3, 2021. On May 26, 2021, an unidentified person at Cristo Rey terminated Ms. McGarrigle's employment while she remained on medical leave beginning on February 15, 2021. An unpleaded person explained Cristo Rey eliminated the Human Resources Director position as the reason for Ms. McGarrigle's termination.

But Cristo Rey hired an unidentified time a woman more than ten years' younger than Ms. McGarrigle to the Director of Human Resources position. Ms. McGarrigle does not allege the new employee's race.

Ms. McGarrigle filed a second charge with the Equal Employment Opportunity Commission on January 10, 2022 claiming age-based discrimination and retaliatory discharge, dual-filed with the Philadelphia Commission on Human Relations.[4]

## II.   Analysis

Ms. McGarrigle sued Cristo Rey alleging race-based discrimination under 42 U.S.C. § 1981; discrimination in violation of Title VII,[5] the Age Discrimination in Employment Act,[6] the Family Medical Leave Act;[7] and discrimination based on race, sex, and age under the Philadelphia Fair Practices Ordinance.[8]

Cristo Rey moves to dismiss all claims.[9] It argues Ms. McGarrigle fails to state a claim: (1) for race-based discrimination under section 1981; (2) for interference or retaliation claim under the Family and Medical Leave Act; (3) for race and sex-based discrimination under Title VII or the Philadelphia Fair Practices Ordinance; (4) for age discrimination under Age Discrimination in Employment Act; and (5) for retaliation under Title VII, the Age Discrimination in Employment Act, or the Philadelphia Ordinance.

### A.  Ms. McGarrigle does not plead intentional discrimination under section 1981.

Ms. McGarrigle claims Cristo Rey violated 42 U.S.C. § 1981 when it terminated her based on her Caucasian race. Congress in section 1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …"[10]

To state a claim for race-based discrimination under section 1981, Ms. McGarrigle must allege: (1) she belongs to a racial minority; (2) an intent by Cristo Rey to discriminate on the basis

of race; and (3) "discrimination concerning one or more of the activities enumerated" in section 1981.[11] Cristo Rey argues Ms. McGarrigle fails to allege all three elements of a section 1981 claim.

We begin by addressing the first and third elements. Cristo Rey argues Ms. McGarrigle fails to meet the first element because she is white and not a member of a racial minority. We construe this as an argument Ms. McGarrigle cannot, as a matter of law, meet the first element because white people are not a racial minority. This is incorrect. Nearly fifty years ago, the Supreme Court ruled section 1981(a) prohibits discrimination in private employment on the basis of race, including racial discrimination against white persons.[12] We do not adopt Cristo Rey's argument Ms. McGarrigle fails to meet the first element of a section 1981 claim.

The third element requires Ms. McGarrigle allege discrimination concerning "one or more of the activities enumerated" by section 1981, including the right to make and enforce contracts. Cristo Rey argues we must dismiss this claim because Ms. McGarrigle failed to allege an activity enumerated in the statute, particularly a failure to allege an employment contract with Cristo Rey. Cristo Rey fails to cite authority for this proposition. Although it appears our Court of Appeals has not definitively ruled on this issue, the weight of authority from district courts in our Circuit and from other courts of appeals hold the termination of an at-will employee based on race is actionable under section 1981.[13] We see no reason to depart from the reasoning offered by Judges at the motion to dismiss stage. If we accepted Cristo Rey's argument, no at-will employee could ever challenge her termination for race-based discrimination under section 1981, a restriction on the statute's broad guarantee against discrimination on the basis of race passed after the Civil War. We decline to do so.

Cristo Rey fares better with its argument as to the second element of Ms. McGarrigle's section 1981 discrimination claim; Ms. McGarrigle does not allege Cristo Rey intended to

discriminate against her on the basis of Caucasian race. We agree. Ms. McGarrigle fails to allege

facts allowing us to infer Cristo Rey intended to discriminate against her when it terminated her

employment because she is Caucasian. Ms. McGarrigle argues she alleges termination motivated

"by her age, race and/or her claims of age and race discrimination" but there are no such allegations

in her Complaint, and she does not tell us where in her Complaint she did so.[14] Ms. McGarrigle

alleges only her termination "was motivated by [her] age and/or made in retaliation for [her]

objecting to or opposing discrimination, or for her filing complaints of discrimination."[15]

Ms. McGarrigle argues Principal O'Connell's comment she is a "middle-aged white

woman" indicates race may have been "implicated" in her termination and is at least plausible.

While Ms. McGarrigle is not required to **prove** a discriminatory intent at the motion to dismiss

stage, the Federal Rules of Civil Procedure require her to allege enough facts to "raise a reasonable

expectation that discovery will reveal evidence of [each] necessary element."[16]

Ms. McGarrigle falls short of the federal pleading requirements as to race-based

discrimination. We dismiss her section 1981 claim with leave to amend if she can do so in good

faith consistent with Federal Rule of Civil Procedure 11.[17]

### B.  Ms. McGarrigle fails to state a Family and Medical Leave Act claim.

Cristo Rey moves to dismiss Ms. McGarrigle's Family and Medical Leave Act (FMLA)

claim under either an interference or retaliation claim. We cannot determine the type of FMLA

claim asserted by Ms. McGarrigle. Her opposition to Cristo Rey's motion does nothing to clarify

her FMLA claim, although from her opposition it appears she asserts an FMLA retaliation claim

based on her identification of the elements of such a claim.[18]

Congress, through the Family and Medical Leave Act, provides eligible employees "a total

of 12 workweeks of leave during any 12-month period" for six enumerated reasons including to

care for the birth or adoption of a child, care for a spouse, child, or parent with a serious health condition, and because of an employee's serious health condition making the employee unable to perform the functions of her position.[19] Congress, through the FMLA, makes it unlawful for an employer to, *inter alia*: (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter"; and (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[20] These two types of FMLA claims are known as an "interference" claim and a "retaliation" claim.[21]

**1.  Ms. McGarrigle fails to allege an FMLA interference claim.**

An FMLA interference claim may be based on two theories: (1) a denial of benefits claim; and (2) a failure to advise claim.

To state an interference claim based on a denial of benefits, Ms. McGarrigle must allege: (1) she is an eligible employee under the FMLA; (2) Cristo Rey is an employer subject to the FMLA's requirements; (3) she is entitled to FMLA leave; (4) she gave notice to Cristo Rey of her intention to take FMLA leave; and (5) Cristo Rey denied her benefits to which she is entitled under the FMLA.[22]

To state an interference claim based on a failure to advise, Ms. McGarrigle must allege: (1) she told Cristo Rey she is taking FMLA-qualifying leave triggering Cristo Rey's notification obligations; (2) Cristo Rey failed to advise her of her FMLA rights; (3) the failure to advise rendered her unable to exercise her FMLA rights in a meaningful way; and (4) injury.[23] The FMLA's implementing regulations require an employer give employees individual written notice when an absence is FMLA-qualifying. Once an employer is on notice an employee is taking FMLA-qualifying leave, the employer must notify the employee of her eligibility to take FMLA leave; notify the employee in writing whether the leave will be designated as FMLA leave; provide

written notice detailing the employee's obligations under the FMLA and explaining any consequences for failing to meet the obligations; and notify the employee of the specific amount of leave the employer will count against the employee's FMLA leave entitlement.[24] A failure to advise claim becomes actionable when the employee is prejudiced by an employer's failure to comply with the notification requirements rendering the employee unable to exercise her right to FMLA leave.[25]

Ms. McGarrigle does not allege Cristo Rey either denied her FMLA leave or failed to advise her of her FMLA rights. Ms. McGarrigle instead alleges she went on medical leave under the FMLA around February 15, 2021 making it implausible Cristo Rey denied her leave or failed to advise her of her FMLA leave rights.[26] We dismiss an FMLA interference claim with leave to amend to assert such a claim if Ms. McGarrigle can do so in good faith under Rule 11.

**2.  Ms. McGarrigle fails to allege an FMLA retaliation claim.**

To state an FMLA retaliation claim, Ms. McGarrigle must allege: (1) she invoked her right to leave; (2) she suffered an adverse employment action; and (3) the adverse action is causally related to the invocation of her FMLA rights.[27] As to the causation element, Ms. McGarrigle may rely on either: (1) an unusually suggestive temporal proximity between her protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing.[28]

Ms. McGarrigle alleges she began an FMLA-qualified leave around February 15, 2021; Cristo Rey terminated her on May 26, 2021, fourteen weeks and two days after beginning her FMLA leave; Cristo Rey made the decision to replace her while she remained on FMLA leave; and taking FMLA leave "was a factor" in her termination.[29] Even assuming Ms. McGarrigle alleges facts sufficient to meet the first and second elements of an FMLA retaliation claim, she

fails to allege facts to meet the third element requiring pleading facts allowing us to plausibly infer causation between the invocation of her FMLA rights and her termination.

Based on the allegations, Ms. McGarrigle does not appear to have been on FMLA leave at the time of her termination. We do not know her status at the time of her termination. There are no facts alleged allowing us to infer a causal connection between the exercise of her FMLA leave in February 2021 to her termination other than the fact of her termination on May 26, 2021. Ms. McGarrigle's response in opposition to Cristo Rey's motion to dismiss asserts her allegations of "termination while out on FMLA 'is more than sufficient to create a genuine issue of material fact of causal connection' even in the context of a dispositive motion, and surely … sufficient to withstand a Rule 12(b)(6) motion to dismiss."[30] But there is no allegation Cristo Rey terminated her while out on FMLA leave; there is only an allegation Cristo Rey "made the decision to replace" her while out on FMLA leave.[31] And using the dates alleged by Ms. McGarrigle, Cristo Rey terminated her fourteen weeks after beginning her FMLA leave—two weeks beyond a twelve-week FMLA leave—suggesting she could not have been on FMLA leave.

We cannot infer Ms. McGarrigle's status at the time of her termination because she fails to make any plausible allegations. We dismiss an FMLA retaliation claim with leave to amend to assert such a claim if Ms. McGarrigle can do so in good faith under Rule 11.

### C. Ms. McGarrigle fails to state claims for race or sex-based discrimination under Title VII or the Philadelphia Ordinance, but we allow a retaliation claim to go forward.[32]

Congress in Title VII prohibits employment discrimination based on race and sex, among other protected classes.[33] Congress also prohibits an employer from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice of this subchapter …"[34] Ms. McGarrigle alleges President O'Connell's March 2020 "middle-aged white woman"

comment and her May 2021 termination constitute discrimination on the basis of her race and sex in violation of Title VII. Cristo Rey moves to dismiss Ms. McGarrigle's Title VII discrimination and retaliation claims.

### 1. Ms. McGarrigle does not plead a Title VII race or sex discrimination claim.

To state a discrimination claim under Title VII, Ms. McGarrigle must plead sufficient facts to raise a reasonable expectation discovery will reveal evidence of: (1) membership in a protected class; (2) qualification to hold the position; (3) an adverse employment action under (4) "circumstances that could give rise to an inference of discrimination."[35]

Cristo Rey concedes Ms. McGarrigle alleges she is a white female and suffered an adverse action in the form of termination. But it argues Ms. McGarrigle fails to allege she is qualified to hold the position (second element) and circumstances giving rise to an inference of discrimination (fourth element). With regard to the second element, Ms. McGarrigle does not plead she is qualified for the position of Human Resources Director. Ms. McGarrigle concedes she did not specifically plead her qualification to hold the position but argues "the mere fact" she held the position must mean she is qualified.[36] By the thinnest of margins, we conclude Ms. McGarrigle alleges her qualification for the position.[37]

Regarding the fourth element, Ms. McGarrigle fails to offer a single allegation from which we could infer a discriminatory discharge based on race or sex. Cristo Rey argues Ms. McGarrigle "must" identify similarly situated comparator employees treated more favorably than her to sufficiently plead discrimination and her failure to plead comparators is fatal. We disagree. Although we often "focus on the absence of adequate comparator evidence because this appears to be the most obvious way to supplement" a deficient complaint, comparator evidence is just one of "a number of ways" to support an inference of discrimination.[38] There is no requirement to

plead comparator evidence to support an inference of discrimination and such an inference may be supported by, among other factors, "evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by … supervisors suggesting [protected characteristic] animus."[39]

It is true Ms. McGarrigle fails to allege comparators and such a failure is not dispositive, but Ms. McGarrigle must allege something from which we can infer race and sex-based discrimination. There are no such allegations. Ms. McGarrigle alleges she is a white female. There are no allegations pertaining to how Cristo Rey treated similarly situated employees outside her protected class more favorably. There are no allegations to show a causal nexus between her membership in protected classes of race and sex and her termination.

There are no allegations to show a causal nexus between President O'Connell's "middle-aged white woman" comment made to Supervisor Doyle and the termination over one year later. In short, there is nothing from which we can infer circumstances supporting an inference of discriminatory animus based on race and sex. For largely the same reasons as our dismissal of her section 1981 claim based on race discrimination, we dismiss Ms. McGarrigle's Title VII race discrimination and sex discrimination claims with leave to amend if she can do so consistent with Rule 11.[40]

### 2.  We allow the Title VII and section 1981 retaliation claims to go forward.

To state a retaliation claim under Title VII, Ms. McGarrigle must plead sufficient factual allegations to raise a reasonable expectation discovery will reveal evidence of three elements: (1) she engaged in conduct protected by Title VII; (2) Cristo Rey took an adverse action against her; and (3) a causal link exists between her protected conduct and Cristo Rey's adverse action.[41] Cristo

Rey challenges the third element; a causal nexus between Ms. McGarrigle's protected conduct and her termination.

To survive Cristo Rey's motion to dismiss, Ms. McGarrigle must plead facts plausible to support an inference of a causal connection between her complaints and her termination. The type of allegations to support such a claim are "intervening antagonism or retaliatory animus, inconsistencies in the employer's articular reasons for terminating the employee, or any other … [allegations that would] support the inference of retaliatory animus."[42] Where temporal proximity between protected activity and an adverse action is "unusually suggestive," it alone is sufficient to create an inference of causality at summary judgment.[43] Where the temporal proximity is not "unusually suggestive" we consider whether "the proffered evidence, looked at as a whole, may suffice to raise the inference" of causation.[44] Our Court of Appeals emphasizes "temporal proximity merely provides an evidentiary basis from which an inference [of causation] can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific."[45] We are mindful we are examining Ms. McGarrigle's Complaint through the lens of a motion to dismiss and not a motion for summary judgment.

Based on Ms. McGarrigle's allegations, we have the following timeline: President O'Connell made the "middle-aged white woman" comment on March 3, 2020; Ms. McGarrigle complained to both Supervisor Doyle and Counsel Wuisinich at some unidentified time but before the school began remote work because of the pandemic (so sometime between March 3 and March 13, 2020); nearly one year later, on February 12, 2021, she complained to President O'Connell about his comment; she filed a charge with the Equal Employment Opportunity Commission on April 30, 2021 claiming race, age, and gender discrimination; Cristo Rey and President O'Connell

12

received notice of her charge with the Commission on May 3, 2021; and Cristo Rey terminated her approximately three weeks later on May 26, 2021.

Cristo Rey argues Ms. McGarrigle fails to plead a causal nexus between: (1) her filing a complaint with Cristo Rey in March 2020 and her termination over one year later on May 26, 2021; and (2) her April 30, 2021 charge with the Commission and her May 26, 2021 termination.[46] Cristo Rey focuses its causal link argument on the lack of temporal proximity between her protected activity under Title VII and her termination. It argues the temporal proximity between Ms. McGarrigle's protected activity and her termination is not unusually suggestive to infer causation and there are no other alleged facts plus the timing to infer causation.

Ms. McGarrigle does not allege temporal proximity. She instead argues we can infer a causal connection between her protected activity and termination from a constellation of events as alleged: Cristo Rey terminated her on May 26, 2021 with an explanation it would be eliminating her position; Cristo Rey then replaced her *after* Ms. McGarrigle made complaints about President O'Connell's remark in March 2020 and February 2021 and filed a charge with the Commission on April 30, 2021 complaining of race, age, and gender discrimination; and Cristo Rey and Principal O'Connell learned about her charge on May 3, 2021.

We question whether complaints made about Principal O'Connell's comment in March 2020 have a causal connection to Ms. McGarrigle's termination fourteen months later. And if Ms. McGarrigle only alleged this fact, we would be inclined to agree with Cristo Rey. But Ms. McGarrigle alleges she filed a charge with the Commission about race and sex discrimination in late April 2021; Cristo Rey and Principal O'Connell received notice of the charge in early May 2021; and then terminated Ms. McGarrigle three weeks later and replaced her after telling her the reason for her termination is her position would be eliminated. Cristo Rey asserts Ms. McGarrigle

withdrew or dismissed her April 30, 2021 charge "on the same day it was sent," suggesting it is not protected activity or somehow meritless. We cannot consider Cristo Rey's factual assertion at the motion to dismiss stage; we consider all the well-pleaded allegations of the Complaint and accept them as true. Cristo Rey's fact argument is appropriate at the summary judgment stage.

We allow Ms. McGarrigle's Title VII and Philadelphia Ordinance retaliation claims to go forward.

### D. Ms. McGarrigle pleads age discrimination and retaliation under ADEA and the Philadelphia Ordinance.[47]

Congress in the Age Discrimination in Employment Act (ADEA) prohibits an employer "to fail or refuse to hire or discharge any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age; …"[48] Congress in the ADEA also makes unlawful retaliation: "It shall be unlawful for an employer to discriminate against any of his employees … because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."[49] Cristo Rey moves to dismiss Ms. McGarrigle's age-based discrimination and retaliation claims under ADEA.

#### 1.  Ms. McGarrigle pleads an ADEA discrimination claim.

To state a claim for age discrimination under ADEA, Ms. McGarrigle must allege four elements: (1) she is at least forty; (2) she is qualified for the job; (3) she suffered an adverse employment action; and (4) Cristo Rey replaced her with someone else "sufficiently younger so as to support an interference of a discriminatory motive."[50]

Cristo Rey concedes Ms. McGarrigle alleges she is over forty (first element) and suffered an adverse action in the form of termination (third element). But, like its motion to dismiss the Title VII claim, Cristo Rey argues Ms. McGarrigle fails to allege she is qualified to hold the

position (second element) and circumstances giving rise to an inference of discrimination (fourth element). For the reasons explained in our Title VII analysis, we conclude Ms. McGarrigle just barely pleads her qualification for the Human Resources Director position.

Cristo Rey also argues Ms. McGarrigle fails to plead facts to support an inference of causation. It argues Ms. McGarrigle "speculates" without factual support or detail replacement by a woman over ten years younger than her and fails to allege facts to support a termination because of her age. At summary judgment, a plaintiff alleging age discrimination must prove it is more likely than not "but for" her age the employer would not have fired her.[51] But we are not at summary judgment. Ms. McGarrigle alleges Cristo Rey terminated her on May 26, 2021, telling her the position of Human Resources Director will be eliminated. Nevertheless, Cristo Rey allegedly hired another woman for the same position who is more than ten years younger than her. Cristo Rey may dispute this fact, and it may turn out to be untrue, but this no doubt will be revealed in discovery. We deny the motion to dismiss the ADEA discrimination case.

### 2.  Ms. McGarrigle pleads an ADEA retaliation claim.

To state an ADEA retaliation claim, Ms. McGarrigle, must allege three elements: (1) she engaged in protected activity; (2) an adverse action either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action.[52] Cristo Rey challenges the causal connection element, arguing the Complaint fails to identify a causal nexus between Ms. McGarrigle's protected activity and her termination and the alleged temporal proximity is not sufficiently close to imply causation. We disagree with Cristo Rey. For substantially the same reasons as analyzed for Title VII retaliation, we conclude Ms. McGarrigle states a claim for retaliation under ADEA.

Ms. McGarrigle allegedly filed a charge with the Commission on April 30, 2021 complaining about race, age, and gender discrimination. She alleges Cristo Rey and President O'Connell received notice of the charge on May 3, 2021. She alleges Cristo Rey terminated her approximately three weeks later because her position as Director of Human Resources would be eliminated. Cristo Rey then hired a woman over ten years younger than Ms. McGarrigle to the same position it allegedly planned on eliminating. She alleges the excuse for terminating her because of the elimination of her position is a pretext for her discharge in retaliation for her complaints of age discrimination. Ms. McGarrigle alleges just enough facts to raise a reasonable expectation discovery will reveal evidence of each necessary element of an ADEA retaliation claim. We deny the motion to dismiss.

### III.   Conclusion

We grant Cristo Rey's motion in part to dismiss Ms. McGarrigle's: race discrimination claim under 42 U.S.C. § 1981; the FMLA interference and retaliation claims; and the Title VII discrimination claim without prejudice for Ms. McGarrigle to timely amend her complaint if she can do so consistent with Federal Rule of Civil Procedure 11. We deny Cristo Rey's motion in part and will allow Ms. McGarrigle's Title VII and section 1981 retaliation claim; her ADEA discrimination claim; and her ADEA retaliation claim to go forward.

---

[1] ECF Doc. No. 1 ¶ 7.

[2] *Id.* ¶ 12.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 18. The Equal Employment Opportunity Commission issued a right-to-sue letter on the January 10, 2022 charge on August 25, 2022. *Id.*

[5] 42 U.S.C. § 2000e, *et seq.*

---

[6] 29 U.S.C. § 621, *et seq.* ("ADEA").

[7] 29 U.S.C. § 2601, *et seq.* ("FMLA").

[8] Phila. Code § 9-1100, *et seq.* ("PFPO"). Section 9-1103(A)(1) of the Philadelphia Fair Practices Ordinance makes it unlawful for an employer "to refuse to hire, discharge, or discriminate against any person because of race, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, handicap, or marital status with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment." Section 9-1103(A)(7) prohibits retaliation by making it unlawful for an employer to "penalize or discriminate in any manner against any individual because he has opposed any practice forbidden by this Chapter or because he has made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

[9] ECF Doc. No. 8. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[10] 42 U.S.C. § 1981(a). The term "make and enforce contracts" is defined by the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

[11] *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (quoting *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010)).

[12] *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285–87 (1976).

[13] *Grasty v. World Flavors, Inc.*, No. 11-1778, 2011 WL 3515864, at * 5 (E.D. Pa. Aug. 11, 2011); *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 701–02 (E.D. Pa. 2002) (collecting cases); *Sims v. Mercedes-Benz USA, LLC*, No. 16-9051, 2017 WL 3641743, at * 4 (D.N.J. Aug. 24, 2017) (collecting cases); *Rodrigues v. Motorworld Auto. Grp., Inc.*, No. 16-1674, 2017 WL 1036477, at *4 (M.D. Pa. Mar. 17, 2017); *Rouse v. II-IV, Inc.*, No. 06-566, 2007 WL 1007925, at *10 (W.D. Pa. Mar. 30, 2007). Other Courts of Appeals have found at-will employment is sufficient to sustain a section 1981 claim for racially discriminatory employment practices. *See, e.g., Walker v. Abbott Labs.*, 340 F.3d 471, 475–77 (7th Cir. 2003); *Skinner v. Maritz, Inc.*, 253 F.3d 337, 340–41 (8th Cir. 2001); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000); *Lauture v. Int'l Bus. Mach. Corp.*, 216 F.3d 258, 261–64 (2d Cir. 2000); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1020 (4th Cir. 1999).

[14] *See* ECF Doc. No. 9-1 at 4–5.

[15] ECF Doc. No. 1 ¶ 17.

[16] *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

[17] It is unclear from the Complaint and the parties' briefing whether Ms. McGarrigle alleged a section 1981 retaliation claim. To establish a retaliation claim under section 1981, Ms. McGarrigle must allege: (1) she engaged in protected activity; (2) an adverse employment action by Cristo Rey; and (3) a causal connection between the protected activity and the adverse employment action. *Castleberry,* 863 F.3d at 267–68. Because the elements of a section 1981 retaliation claim are the same as Title VII, our analysis is included in the Title VII section, *infra*.

[18] *See* ECF Doc. No. 9-1 at 2, 5.

[19] 29 U.S.C. § 2612(a)(1).

[20] 29 U.S.C. § 2615(a)(1), (2).

[21] *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 245 n. 64 (3d Cir. 2016) (citing 29 U.S.C. § 2615(a)(1) and (a)(2)).

[22] *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017).

[23] *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 157 (3d Cir. 2015) (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142–43 (3d Cir. 2004)).

[24] *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3d Cir. 2014) (citing 29 C.F.R. §§ 825.208, 825.300(b)(1), (c)(1), (d)(1), (d)(6)).

[25] *Id.* at 318–19 (quoting *Conoshenti*, 364 F.3d at 143).

[26] ECF Doc. No. 1 ¶ 13.

[27] *Hansler*, 798 F.3d at 158–59 (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012)).

[28] *Clark v. Phila. Housing Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017) (quoting *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014)).

[29] ECF Doc. No. 1 ¶¶ 13, 15, 16, 33, 34.

[30] ECF Doc. No. 9-1 at 5 (citing *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008)).

[31] ECF Doc. No. 1 ¶ 16.

[32] Claims under the Philadelphia Fair Practices Ordinance are construed the same as Title VII claims. *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 594, n. 8 (E.D. Pa. 2020). We apply our analysis of Ms. McGarrigle's Title VII claims together with her Philadelphia Ordinance claims.

[33] 42 U.S.C. § 2000e-2. "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; …" *Id.* § 2000e-2(a).

[34] 42 U.S.C. § 2000e-3. "It shall be an unlawful employment practice for an employer to discriminate against any of his employees …because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* § 2000e-3(a).

[35] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[36] ECF Doc. No. 9-1 at 7–8.

[37] Ms. McGarrigle cites *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 745 (E.D. Pa. 2011) for the proposition she need not specifically plead a necessary element of a Title VII discrimination claim because we can infer it from the surrounding allegations. But *Tanay* is distinguishable. Judge Surrick in *Taney* denied the employer's challenge to the employee's failure

to allege the qualification element of a Title VII discrimination claim. The employee did not specifically allege his qualification as a nursing home administrator, the position from which the employer terminated him. Judge Surrick concluded the employee's allegations he is a licensed and registered nursing home administrator who worked as the administrator for more than three years without incident and nothing to indicate an unsatisfactory job performance is sufficient to allege a reasonable inference of the employee's qualification for the position. *Id.* at 745. But Judge Pratter distinguished *Tanay* where an employee failed to expressly allege the qualification element and where the complaint failed to allege facts from which qualification could be inferred. *See Odrick v. Scully Co.*, No. 17-2566, 2018 WL 6044929, at * 4 (E.D. Pa. Nov. 19, 2018). We caution Ms. McGarrigle she is closer to the allegations Judge Pratter found lacking in *Odrick* than she is to the allegations Judge Surrick found sufficient in *Tanay* and anticipate she will be mindful of the issue if she chooses to later amend her Complaint.

[38] *Golod v. Bank of America Corp.*, 403 F. App'x 699, 702 n. 2 (3d Cir. 2010).

[39] *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)).

[40] Race-based employment discrimination claims brought under section 1981 and Title VII are evaluated in the same way because "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009).

[41] *Connelly v. Lane Constr. Co.*, 809 F.3d 780, 789 (3d Cir. 2016).

[42] *Bishop v. United States Dep't of Agriculture*, 725 F. App'x 165, 167 (3d Cir. 2018) (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007)).

[43] *LeBoon*, 503 F. 3d at 232.

[44] *Id.* (quoting *Farrell v. Planters Lifesavers, Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

[45] *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (quoting *Katchmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)).

[46] We identified another instance of protected conduct: Ms. McGarrigle's February 12, 2021 email to President O'Connell where she complained about his "middle-aged white woman" comment made to Supervisor Doyle. *See* ECF Doc. No. 1 ¶ 12.

[47] Claims under the Philadelphia Fair Practices Ordinance are construed the same as ADEA claims. *Ngai v. Urban Outfitters, Inc.*, No. 19-1480, 2021 WL 1175155, at *7 (E.D. Pa. Mar. 29, 2021). We apply our analysis of Ms. McGarrigle's ADEA claims together with her Philadelphia Ordinance claims.

[48] 29 U.S.C. § 623(a)(1).

[49] *Id.* at § 623(d).

---

[50] *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015)).

[51] *Id.* at 265 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

[52] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). The elements of an ADEA retaliation claim are substantially the same as a Title VII retaliation claim. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015) (quoting *Fogelman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)) (noting the antiretaliation provisions of Title VII and ADEA "are nearly identical" and "precedent interpreting any one of these statutes is equally relevant to the interpretation of the others.")